Our next argument is in docket number 24-1424, Syneren Technologies Corp. v. United States. Good morning, still, Your Honors, and may it please the Court. Alex Ginsberg for Appellant Kansoftec, Inc. The issues in this appeal are critical to the federal procurement community. This appeal asks whether a federal agency is permitted to remand a matter to itself without leave of the court. I don't understand why you're talking about a remand. There wasn't a remand here. They canceled the procurement, or they canceled the awards, right? Your Honor, eventually after what we're calling the self-remand, there was a cancellation of the awards. There's no remand. They didn't say they were self-remanding. They canceled the awards. Is there anything that prevents them from canceling the award? The answer is yes, Your Honor. An agency can't take corrective action unilaterally and implement it, or take a remand in the midst of litigation on its own. No, no, no. Stop talking about a remand, because there wasn't a remand here. If an agency awards a contract, and it gets protested, and the agency looks at it and says, oh, we did something wrong, are you saying it is not permitted to just go ahead and cancel the entire contract and say, we're not going to, we canceled the award, this is done, and then go to the court of federal claims and say, this is moved, dismiss it? I'm saying if the agency takes a corrective action... Answer what I just said. Is that permissible? If an agency looks at a contract award after it's been protested and says, we canceled this, out, nothing else, we canceled this, and goes to the court of federal claim and says, dismiss it, it's moved, they can do that, right? They don't have to get the court's permission to cancel a contract award. In the midst of a protest, an agency... I'm sorry, Your Honor, I'm trying to answer your question here. Well, answer it, but I don't know what your basis for that is. This is just like any other case involving an agency, a private party, or anything else. If somebody gets sued for doing something, and they voluntarily stop doing that, it moots the case, doesn't it? Your Honor, I disagree with that characterization. Do you have any support whatsoever for that? Because that's what a settlement is, or that's what mooting a case is. It happens all the time if somebody takes voluntary action to moot a cause of action. Your Honor, it's not just me who's saying this, the Chief Judge Sonson of the Court of Federal Claims has recognized that the agency... Those are remand cases, and he said if the agency asks for a remand, we're going to judge it by these standards. I don't understand why we're talking about those cases. What happened here is what... I don't know how long you have been doing this protest, but for at least two decades, if not more, agencies will sometimes take unilateral corrective action by canceling the contract award. And then sometimes they'll throw it out all together and say, we're going to send out a new solicitation, we're going to re-solicit, we're going to do a new set of criteria, we're going to do it all. That's been approved by courts for decades. I don't understand why the situation here is any different. Your Honor, let me read a quote from Excel.gov, which is a case cited in our briefs by Judge Sonson, and I'll get to the answer. Is it a remand case? I believe it's a corrective action case. Yes, but the agency asked for a remand to take corrective action. In that case, I will double-check the answer to it, but either way, the case still applies. The government lacks... No, it doesn't. If it's not a request for a remand by the agency, if it's a unilateral corrective action, which they are entitled to take, and there's no legal... You can shake your head at me all you want, but that's not an appropriate behavior at the podium for attorneys. If that's not something that's legally impermissible, then they're entitled to do it. What authority do you have that says an agency can't unilaterally cancel an award while a protest is pending? Your Honor, an agency can announce its intention to take corrective action and make a motion to the court, and that's not what happened here. What? No, we're not talking about that, Your Honor. What sort of regulation or case says that? Judge Yu's question is not going to corrective action. Judge Yu's question is going directly to the limitations, if any, on the government's ability to simply say, oh, we're going to cancel this and redo this. The government does that all the time. In the midst of litigation in a bid protest, the government can make a motion to the court... You keep saying that, but you have not cited a single procurement statute or regulation or relevant case that says that. I understand, Your Honor. We're relying... You've cited cases where the government makes a motion for remand, and certain judges on the Court of Federal Claims have now started imposing a higher standard on whether it's going to agree to that motion or not. Those cases are fine. I mean, I'm not sure I agree with them, but those cases are a different case. The government did not move for a remand in this case, did it? Correct. It canceled the actions. And something it has been doing... I mean, the government cited in its brief. It has been doing this for decades, and nobody has questioned its ability to do that. Your Honor, respectfully, the government hasn't cited a single decision, couldn't cite a single decision where this exact fact pattern has ever happened. The government cited multiple cases, and we responded where the agency announced a corrective action and then did one of the two things that we say you're allowed to do. One is to ask for a remand to implement corrective action or to file a motion that the corrective action moves to the protest. Do you think that the government has never, in response to a protest, just canceled the award and said, the award's done and we're going to re-solicit without asking for permission? Your Honor, that has happened. Well, can I tell you what... I'm sorry, Your Honor, go ahead. Right. So the government cancels an award and says we're going to re-solicit. They don't have to ask for permission to do that, right? Your Honor, that's a different fact pattern than what we're dealing with here. Well, that's what I don't understand. Sure. All they've done here is they've jammed all the steps together. And I know you don't like that, but if, in this case, instead of what they did, they canceled the awards, which they did, and they said, award's done. They went to the Court of Federal Claims and said, dismiss the case. We canceled all the warrants. We terminated them for convenience. Yeah. The Court of Federal Claims has to dismiss it, right? In that situation, Your Honor, that's likely what would happen, yes. And then the government comes back and says, we are reconstituting the selection panel with new people. We're going to re-look at all these bids again. And then they come up with the decision, the same decision they come up with. They can do that, right? Your Honor, they can try to do that. And if plaintiffs have objections, they can raise them, yes. The merits of that. Correct. They jammed that all together. Is there anything impermissible with jamming it all together? The answer is yes, Your Honor. Let me explain. If you can point to me to a statute, or a regulation, or a case that prohibits jamming it all together, I'm happy to hear it. You didn't cite anything in your briefs that said that. Your Honor, I respectfully disagree with that. We cited the Supreme Court's decision in Regents. Regents is not applicable, because even the case Regents recognized that an agency can't supplement its reasoning to support an original decision. But it can come up, it can cancel that decision, and come up with another entirely new agency action. This is the second prong, not the first prong. Your Honor, an agency can do that on remand. It can't do that in the midst of litigation. That's the key lesson from Regents. An agency decision reached in the- But that's because the- No, first of all, I don't think that's the lesson of Regents. But second, that's sometimes peculiar to APA rulemaking, too. An agency can't just cancel something that it's done through rulemaking without undergoing other rulemaking. You don't have anything in the bid protest area that says an agency has to go through some kind of formal procedure beyond issuing notices of termination for convenience, which you agreed they could do. Your Honor, let me describe just the facts as they laid out in this case. The agency didn't cancel the awards and then attempt, upon reconsideration of its evaluation, to issue new awards. That's not what happened. In the midst of a protest, the agency altered the administrative record. No, that's just wrong. That's what happened, Your Honor. That is an inaccurate description of what happened. They did terminate for convenience. They terminated all 12 awards for convenience, right? After their re-evaluation, Your Honor. Again, your dispute is with the steps in which they did it. But I don't see any real difference in the effect of what they did. They terminated the awards for convenience, and then they issued new awards. They didn't alter the record for the first one because it was gone once it was canceled. Those awards are out once they're canceled. So the record for that, it doesn't matter. What matters is the record for the new awards. And maybe it's overlapping. Maybe they should have done it more cleanly. But it is a new decision with a new administrative record that you are free to protest and argue there. And the only way I think you get to challenge those terminations for convenience is if you have some bad faith arguments, which I don't think are present here, right? Your Honor, we didn't have to allege bad faith. We alleged a breach of good faith and fair dealing. If I could just explain the facts for one moment here. Your Honor. I'm familiar with the facts. I just think that you are making a distinction based on cases that aren't applicable because there was no motion for a remand here. Your Honor, I agree there was no motion for a remand, but that's our entire point. I mean, Your Honor, to state it differently, for an agency to ask for a remand because it wants to reconsider, and as Your Honor knows, this court says in SKF USA that an agency has to ask for that relief and has to prove that its interests in the remand are substantial and legitimate. Because in that case, they're asking to reconsider the original decision and come up with new reasons supporting that original decision. If what they had asked for was to cancel that decision or revoke that decision and issue a new decision, they don't have to. And frankly, getting stuff from the trade world is not particularly helpful because there's a lot more statutes and regulations that govern commerce's conduct there and the steps they have to go through rather than in bid protests. Well, Your Honor, I don't think it's a coincidence that several judges at the Court of Federal Claims have applied SKF, including in bid protest cases. I think it's a great decision, and I think those cases applying it are good decisions. Promotions to remand. That's again, we have to accept. Even if we accept the SKF standard, which this court has not approved of yet in bid protests, it applies to motions to remand. Your Honor, if I may, by way of metaphor, if there is a secure facility to which I need access, and I know that I have to go to the gate and go to the guard and show my credentials in order to access that facility, to access it, we'll use the verb access, okay? I can't simply say, you know what, I don't wanna do that. So what I'm gonna do is I'm going to dig under the fence, avoid the guard, not show my credentials, and I won't call it accessing, I'll call it sashaying into the facility, okay? These are just semantic games. What the government did. Yes, but you don't have a right. You don't have any right to enter the facility at all. We're not talking about that. We're talking about something that the agency has a right to do, which is terminate for convenience the award. Your Honor, the agency has a right to take corrective action upon approval from the court after demonstrating its reasons. It doesn't have the unilateral right to dismiss an action. Do you think an agency doesn't have a unilateral right to terminate a contract award for convenience if the bid protest is pending in court? Your Honor, the agency has that right, and of course it's subject to protest. But what the agency doesn't have the right to do, which is exactly what happened here, which was to rewrite the administrative record in the midst of a protest, after which they then terminated the contracts after some amount of time, a few days, reissued the exact same paperwork. It was based on an administrative record that was altered in the midst of a pending protest in direct response to that protest. And let me just add, Your Honor, I hear what you're saying, and I understand that you don't see an issue with this, but I want to commend to you that there's a real Pandora's box possible here. If an agency can do this sort of thing, if in response to a pending protest, an agency can read the arguments, and in this case, by the way, there were some egregious problems with the record that was created, including the fact that the technical evaluation team and source selection board never reconvened to actually conduct the first reevaluation. All the agency did was transcribe, maybe one person transcribed post-hoc rationalizations made by government counsel in the first protest into a new record. So having, you know, faced with new complaints about that failure of process and some substantive problems in the record, what the government did was they met over a teams meeting on one day and reissued paperwork ratifying their initial flawed reevaluation. If an agency can take a complaint, or take, I don't know, a motion for judgment, or take any document filed in the course of a protest and unilaterally change the record in the midst of the protest, to say that would frustrate judicial review is a significant understatement. If you can frustrate judicial review, you can protest the new award decisions that have the new record. Your Honor, where would that end? In the midst of a protest, an agency can unilaterally, whenever it wants to, alter the record? I mean- It's not altering the record. It is canceling the awards, having a new record, and I know this is overlapping records to be sure, and issuing new awards. Your Honor, I commend to you that what this is is a game of semantics. To say that it's not a remand case, or to say the agency has the right to take corrective action, confuses the issues in this protest. What the agency did was unilaterally change the record in violation of Supreme Court precedence, in violation of SKF USA. They effectively remanded without permission from the court. They didn't meet the legal standards to do that. But I will note, again, that if agencies are allowed to do this, there would be no end. Mr. Ginsburg, you've used up all your time. We'll save you, we'll give you a little time for rebuttal. Thank you, appreciate your honor. Yeah. Thank you, Your Honors, and may it please the court. This court should affirm the decision below. Can you just respond to his last point, that the agencies will just continuously keep taking correct, canceling the words and taking corrective action until it gets resolved at once? No, Your Honor. What the government is arguing for here is the status quo of the government's understanding of how corrective action is permissible. So if one looks at- I mean, I don't want to interrupt you, but if that's what they're doing, if they're somehow saying, oh, well, there are these errors, we're gonna cancel, we're gonna redo it. If they keep prolonging that, at some point, if it's bad faith, then it's bad faith, and you can't do that, right? Bad faith is impermissible, but there's a presumption of regularity that we discussed in our brief, and this presumption that they're asking the court to adopt would invert that presumption into a presumption, whether they call it bad faith or a presumption of breach of good faith. That is not consistent with this court's precedent. I mean, the way you did this is a little hinky. I mean, it's done routinely that agencies terminate per convenience and then issue new decisions, but it feels like the decision came, the reevaluation came before the termination per convenience, or that it was done all at the same time. The reason why this case is atypical is because there had already been the Allison decision from the court, and in the Allison decision, the agency had the benefit of the court's assessment of their prior evaluation, and then when the plaintiff filed the bid-purchase complaint, the agency reviewed the bid-purchase complaint and realized that a new evaluation needed to be made, and that's why the fact that the government did not issue a notice of intent to commit corrective action and simply filed a notice of corrective action is because a lot of the analysis and arguments in agency evaluation had already been done, and that's why, as Your Honor mentioned during a conversation with my colleague, that's why everything was lumped more together. Did the contracts get canceled before or after that notice of corrective action was filed in court? The notice of corrective action and the contract cancellations all occurred on July 24th. Okay, and why did the reevaluation occur first? The agency noticed, due to the filing of the complaints, that it needed to take corrective action, and so it conducted an evaluation and then informed the court within days of the first complaints being filed. And Your Honors, I'll note that- Right, it seems like it would have been the better course when they realized they needed to do that to terminate all the awards for convenience right away and then do the evaluation. There was a lot, within the span of those few days, and I believe there may have only been three business days, there was a lot that was occurring and a lot of conversations that were happening at the same time. But the issue that, is the issue before the court on appeal here, is whether the government has the authority to take corrective action despite the filing of a bid protest complaint. And the parties agree that between the awarding of the contracts and then the filing of the bid protest complaint, the government has the right to take corrective action. And counsel for CSI also agrees that after a bid protest complaint is filed, the government may take corrective action if the entirety of the corrective action would move the complaint. So the issue that's limited here is whether or not there's any basis to say that the government's broad procurement authority to take corrective action is limited when the government would address only some of the issues raised in the complaint. And there's no authority that CSI has pointed to that would address that. What if the contracts here had never been canceled? Would the government be standing here saying, everything is okay, they didn't like our evaluation, we did a reevaluation that's better than the prior evaluation, so, this case is over. I would argue that it's possible that yes, the government would still have the authority to take corrective action because the case would then be moved. The government often provides a notice of intent to take corrective action. That would be altering the administrative record in real time, would it not? It would not, because here, your honor, the administrative record hadn't even been filed. The parties were, all of these actions took place before the court's first status conference to address the schedule. I'd look to note, your honors, that the notice of corrective action. But that seems a little bit more problematic. That seems like it does fit within the regent first prong, which is the agency attempts to come up with a new rationale to support its decision while the case is still pending in court. I don't understand why you think you can do that. I mean, I think you can ask the court, you can look at the complaint and say, oh yeah, we see some problems with this, we wanna reevaluate without canceling, will you remand it? And then I think your opponent would be on much firmer ground in his argument, because that seems like post hoc rationalization for an award. But if you cancel the award, then there's no award under protest. And so if you cancel, come up with a new evaluation, and a new award, then they can protest that new evaluation. I guess, I don't know why you're arguing for more than you probably should be arguing for. All right, your honor, well, in response to the context for the initial question, and the government would just like to note that Regents is inapplicable, Regents was a remand case. And to address one of opposing counsel's points in his brief to make sure that it's addressed, no, opposing counsel makes sense. No, but I think the Supreme Court would clearly hold that if an agency action is being challenged in court, the agency can't, during the pendency of that litigation, issue a new justification for that. I mean, that's an APA violation, just accept that. I mean, and that's where I think you run into problems. If you just ask for further explanation, without asking the court, can we remand this for a relook? But you don't have to do that here. And hopefully, you're not gonna do that in other cases. I mean, you canceled the awards. I mean, it's a fundamental principle that did protest for decades, that an agency can take unilateral corrective action by canceling awards. Right, Your Honor. And that's what the agency, the agency canceled the awards here, and it didn't issue new awards until later in August. And my question is really trying to figure out the scope of what's the government's conception of what would be a permissible corrective action. And would a permissible corrective action, in your view, be not canceling the awards, keep sticking with the award, but then improving the record in real time during the litigation by adding in a brand new evaluation on top of the one that was being challenged? I'm not aware of a basis in which, without the cancellation of the awards, we would be able to consider the decision. Just one thing I wanted to check on is, is it your view that APA principles apply here in the context of bid protest litigation? I'd like to make clear that the Court of Federal Claims doesn't have jurisdiction over APA claims. However, the standard of review in bid protests is the arbitrary and capricious standard that's incorporated through the APA. And then I believe in this court's case in Bancorp, it discusses the incorporation of that arbitrary and capricious standard and determines that ultimately it's a rational basis to the contracting officer of a rational basis. Right, but we were just talking briefly about regents and how it would likely be an APA violation if an agency was engaging in post hoc rationalization to further improve its litigation position in the middle of a litigation. And I'm just wondering if you think those principles apply in the context of a bid protest litigation. The basis for the principle, just as an initial matter, I believe we may have cited the case of Axiom 564 F.3D 1374 for the position... Apologies, Your Honor. I... I'm just trying to distinguish between what is an APA claim versus what's the incorporation of an APA standard. And with respect to the incorporation of an APA standard, I apologize, Your Honor, if you may repeat the question. Okay. Regents was talking, among other things, about how it's a violation of APA principles for an agency to engage in post hoc rationalization to defend an already final agency action by improving on the record in somehow some form or fashion or adding additional rationales during the midst of a litigation challenging the agency, underlying agency action. And I'm asking you whether you think that principle applies in the context of a bid protest litigation. Putting aside the origins of the principle, with respect to the principle of post hoc rationalizations, I'm not aware of anything that would say it wouldn't apply in the context of bid protest litigation. But as the Supreme Court held in Biden v. Texas, that was a case in which there had been a new decision that was made. Then we were in a, quote, Regents situation too, which is what the court below found would be more analogous to the situation we have here. And what we have here, because it was a new decision, because the contract were terminated and the new awards were issued, and the agency based its decision on a new evaluation. CSI makes a lot of arguments about turning square corners. This is good governance. This is turning square corners. This is the agency reviewing bid protests and not forcing the courts or the parties to libya before the court took an inefficient motion for remand. The agency was aware that it needed to conduct a new evaluation, and it did so. And the parties, to the extent benefited, and as Judge Hughes mentioned earlier, to the extent CSI would like to challenge the new decision on its face, it retains the ability to do so. And in fact, that's why they amended their complaint in this matter, in order to challenge that decision as well. In addition, Your Honors, moving on from the corrective action, the broad procurement authority that the government has with respect to corrective actions, but before we transition, I'd like to mention that in CSI's brief, the government discusses that the authority to reconsider is inherent in the authority to decide. That is the case of Tokyo TKS, is what's commonly referred to in the case law. And in that case, those principles are applicable here. CSI does not dispute that the government had the authority to issue new decisions, to issue any of the decisions that it had here, but so it had the authority to reconsider the decisions, absence of statutory exception to the contrary. If you look at the Tucker Act, that provides jurisdiction to the Court of Federal Claims, you'll also see that there's principles of efficient justice in terms of processing the bid protests. If you look to rule one of the rules of the Court of Federal Claims, they say, again, that efficiency is also to be taken into account, and the corrective action procedure that the government uses is consistent with all of that. However, in CSI's brief, they don't respond to the Tokyo principle, and I think that's telling. And in addition, moving on, we'd just like the Court to address the Keltner standard that the CSI has raised. We don't have to address that, though, do we? That's not relevant to this case because this is an Aremia case. I understand the government has a beat with that line of cases, and that it's imposing what you think is a stricter standard on motions to compel, or motions to remand, but since this isn't a remand case, why would we address that? Yes, Your Honor, we agree that this court does not need to reach that question. However, there's four quick reasons why the court may be inclined to do so. As demonstrated- I think the court is not, or at least this member of the court is not inclined to issue advisory opinions to the Court of Federal Claims. When those cases come back to bite you and you want an appeal, I think you can bring them then. Well, that's one of the issues, Your Honor. This is a standard that does tend to evade review. If the government survives the compelling justification standard, then the government would not appeal that decision, and if the government does not survive that standard, then further- Well, maybe you can actually make that argument in a case that involved a remand, not the one that doesn't involve a remand. Just one last point, if I may, Your Honor. There does appear to be an intra-court split among the judges of the Court of Federal Claims that there would be additional clarity if this court indicated that the Keltner incorporation of ad hoc groups, incorporation of shake-proofed, it was not a proper reading of SKF. If Your Honors have no further questions, the government would just like to note that this court should not permit the filing of a bid protest complaint to divest the government of authority to take corrective action. The government acted within the bounds of its broad procurement authority as a matter of law and as a matter of good governance. Thank you. Thank you, Mr. Pierce. Give Mr. Ginsburg three minutes. Thank you, Your Honors. Just briefly, if this case involves the status quo as the government states, I'm curious why the government couldn't cite a single decision of the Court of Federal Claims where this has ever happened before. If you look in our reply brief and our response of footnotes at pages seven through nine, seven through 10, we responded to every single one of the dozens of cases cited by the government and not a single one of them involved changing the, or reevaluating in the midst of a protest and attempting to pass that new evaluation taken off to the trial court as the new reason and considered judgment of the agency. It's never happened as far as we can detect, and there's a reason. It's not a coincidence. Doesn't the cancellation of the original bid change the equation and distinguish over all of those cases? Your Honor, I think it does distinguish against all of those cases, but... Because those cases deal with the remand or request to reconsider or some such thing.  Without seeking permission, but the fact that in this case, ignoring for the moment the specific timing of when it happened, there was a cancellation for convenience, and the government has an absolute right to do that, does it not? Your Honor, it doesn't have the right to do it following a reevaluation where it's already shown its hand as far as what the next evaluation will be. It doesn't. I don't know. I'm unaware of any limitation on the government's ability to terminate for convenience. Sure. So is your belief that they did the reevaluation and then terminated for convenience and re-awarded? If they had terminated for convenience at noon, did the reevaluation at two, re-awarded at four, is that okay? Your Honor, under that fact pattern, which is similar to this fact pattern, I don't see how that reevaluation could be the fair and considered judgment of the agency. But that's a different argument. You can challenge that reevaluation that results in a new award as either the product of bad faith or also insignificant, but it's not the procedure that you're challenging, it's the actual merits of the reevaluation, which you can do here, too. Your Honor, I agree. And if you look at our grounds for appeal, our second ground, let me focus on our second ground for appeal for a minute, breach of good faith and fair dealing. I mean, you didn't bring that up on your opening. Is it really fair to bring that up when he didn't get to talk about it? I'd be happy to offer him more time. Your Honor, I think it's fully briefed, but the fact is this, the fact is this, is that the Court of Federal Claims. The Court didn't find any bad faith here, did they? We didn't allege bad faith. It's a breach of the duty to be fairly and honestly considered, which doesn't require. And we didn't find a breach of that either. Right, and our point is that that was error. You have an amended complaint now, right, challenging the new award, right? So at least you've got that. I'm sorry, Your Honor, I'm, yeah. There's been a new contract award, right? Oh, it's procurement. Award of contracts. Yes. And once again, you did not get an award of a contract. And I assume you're challenging that award. Have challenged in the past, yeah.  That, yeah, that litigation is completed already. But Your Honor, I. What are the results of that? Well, that's the challenge being. No, no, no, let's answer the question. Did you win it up, or were there new awards of funds? I'm sorry, I think we're, the posture of this is getting confused. I'm asking about. Those weren't the decisions that are on appeal here. This is this case. It's this case, yes. He didn't docket it as a separate case. Correct. As I could have. He upheld the results of the new awards. Correct. Yes. Correct. And our point is that at no point was Can Softec, or the other plaintiffs in this case, given a fair and reasoned reevaluation. Have you appealed that decision by the claims court, which upheld the new award? That is this appeal. That's this appeal. Yeah. Well, I thought this appeal was. It's the second part of your brief. You just didn't talk about it in your opening argument. I think so. I think these issues are intertwined. Okay. And let me just quickly explain that with the brief. I think time is up. We've got to move on. Thank you very much. Case is submitted.